# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID ALAN COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-211-HE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff David Alan Cook brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R.__"). The parties have briefed their positions and the case is now ready for decision. As discussed below, because the Administrative Law Judge ("ALJ") did not comply with the Commissioner's and the Tenth Circuit's requirements for consideration of a treating physician opinion, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for DIB on May 8, 2008.[1] R. 237, 254. Plaintiff alleged a disability onset date of November 30, 2007, and sought benefits on the basis of Type 1 diabetes, neuropathy, seizures, surgery to his left hand, depression, anxiety, and chronic pain. R. 254, 259. Following denial of his application initially and on reconsideration, Plaintiff requested a hearing before an ALJ, which was held on July 28, 2010. R. 55-99, 102. In addition to Plaintiff, a vocational expert appeared and testified at the hearing. R. 89-97. The ALJ issued an unfavorable decision on September 23, 2011. R. 30-48.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from December 1, 2008, through March 19, 2010, but that there has been a continuous twelve-month period since that time when Plaintiff did not engage in substantial gainful activity. R. 36-37; *see* 20 C.F.R. §§ 404.1505(a), 404.1520(b). At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, hypertension, hyperlipidemia, left shoulder impingement, a history of alcohol and polysubstance abuse, and intravertebral disc disorder of the lumbar spine. R. 37; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listings"). R. 37-40; *see* 20 C.F.R. § 404.1520(d).

---

[1] Plaintiff also sought, and was denied, Supplemental Security Income ("SSI") benefits. R. 168-82. Plaintiff does not appeal the denial of SSI benefits in this action. *See* Compl. (Doc. No. 1) ¶¶ 1, 3; Pl.'s Br. (Doc. No. 13) at 2.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 40; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considered Plaintiff's medical records and his testimony at the hearing. R. 40-46. The ALJ found that Plaintiff had the RFC to perform light work with some physical limitations, determining that Plaintiff:

> retains the residual functional capacity to lift and/or carry and push and/or pull twenty pounds occasionally, and ten pounds frequently. He can stand and/or walk for six hours in a workday. He can sit for six hours in a workday. The claimant cannot use foot controls. He cannot work overhead with the non-dominant arm. He can handle, finger, and feel occasionally with the non-dominant arm.

R. 40 (emphasis omitted); *see also* 20 C.F.R. § 404.1567(b) (defining "light work"); Pl.'s Br. at 3, 17 (stating that the ALJ found that Plaintiff had the RFC "to perform light work involving no use of foot controls, and no overhead work with the left [non-dominant] arm" (brackets in original)). Based on this RFC assessment, the ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work (lubrication technician, customer service representative, telephone solicitor, order selector, forklift operator, and material handler), as that work requires a greater (medium to heavy) exertional capability than that retained by Plaintiff. R. 47.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 47-48. Taking into consideration the degree of erosion to Plaintiff's occupational base and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform the light, unskilled occupations of counter clerk or rental clerk. R. 48. The ALJ further concluded that Plaintiff could perform the sedentary, unskilled occupation of call-out operator. R. 48. The ALJ held that all of these occupations offer jobs that exist in significant

3

numbers in the national economy. R. 48; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 404.1566. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 48.

Plaintiff's request for review by the Appeals Council was denied on January 2, 2013.[2] R. 1-4. Thus, the September 23, 2011, determination of the ALJ is the Commissioner's final decision. S*ee* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable

---

[2] Although the Record contains correspondence from late 2011 and from 2012 reflecting that Plaintiff's attorney, following the ALJ's denial of benefits on September 23, 2011, had requested additional time before the SSA acted on Plaintiff's request for review, there is no indication in the Record that Plaintiff sent any additional evidence or statements for consideration by the Appeals Council. *See* R. 5-22.

4

rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises several claims on appeal. Plaintiff's primary contention of error is that the ALJ's RFC assessment is flawed because the ALJ failed to properly consider the uncontradicted medical opinion of a physician who treated Plaintiff's left shoulder. Plaintiff relatedly argues that the ALJ's RFC is not supported by substantial evidence, that Plaintiff suffered from severe shoulder-related impairments that were not recognized by the ALJ, and that the ALJ failed to fully and fairly develop the record relevant to Plaintiff's shoulder issues. Plaintiff further asserts that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments were not severe in nature. *See* Pl.'s Br. at 17-31; Pl.'s Reply Br. (Doc. No. 17) at 1-11.

## ANALYSIS

### A. *The Treating Physician Rule*

SSA regulations distinguish among various types of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, 404.1513(a). Generally, the highest weight is given to the opinion of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, 404.1527(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The opinion of a "nontreating source"—which includes a physician who has examined the claimant but does not have a current or past "ongoing treatment relationship" with the

5

claimant—must be considered, but generally is not given as much weight as that of a treating source. 20 C.F.R. §§ 404.1502, 404.1527(c). All other medical opinions received into the record by the SSA likewise must be considered. *Id.* § 404.1527(c).

When considering the opinion of a claimant's treating physician, the ALJ—pursuant to the "treating physician rule"—must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician is given controlling weight if it is both well supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(c)(2). The Tenth Circuit long has recognized that "an ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins*, 350 F.3d at 1300 (alteration and internal quotation marks omitted). That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See id.* at 1300-01. The ALJ is generally obligated to state what weight *is* being given to the opinion and his or her reasoning therefor. *Id.* at 1301. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). Finally, if an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

## B. Whether the ALJ Properly Considered the Opinions of Dr. Calvin Johnson Regarding the Functional Restrictions Caused by Plaintiff's Shoulder Impairment

Plaintiff suffered a work-related injury or injuries to his left shoulder in late 2009 and thereafter sought treatment. R. 43, 1197, 1215. On November 17, 2009, Dr. Harvey Jenkins saw Plaintiff and diagnosed impingement syndrome in both shoulders; on January 13, 2010, Dr. Jenkins amended his diagnosis to impingement syndrome in just the left shoulder. R. 43, 1193, 1197. Two weeks later, Calvin Johnson, M.D., examined Plaintiff and diagnosed acromioclavicular arthrosis and rotator cuff tendonitis. R. 43, 1215. Dr. Johnson's report from that visit noted that Plaintiff was working light duty and recommended surgical intervention in the form of "a left shoulder arthroscopy, subacromial decompression, distal clavicle excision and indicated procedures." R. 1215-16; *see also* R. 1213-14. Dr. Johnson also recommended work restrictions of "no lifting/pushing/pulling greater than 10 pounds," "[n]o reaching above or across away from the body," and that Plaintiff be considered "TTD"—"temporary totally disabled"—if light duty was not available at Plaintiff's work. R. 1215-16.

Dr. Johnson performed surgery without complication on Plaintiff's left shoulder on March 19, 2010, according to Dr. Johnson's Operative Report of that same date. R. 1211-12. This Operative Report states that Plaintiff's preoperative diagnosis was left-shoulder impingement but adds "[p]artial cuff tear supraspinatus," "[a]nterior labral tear," and "[a]cromioclavicular arthrosis" to his postoperative diagnosis. R. 1211. According to a Workers' Compensation Progress Report transmitted from Dr. Johnson to an insurer (apparently the insurer of Plaintiff's employer), on March 30, 2010, Plaintiff was "doing well and having no problems" post-surgery. R. 1210. Plaintiff was permitted to return to modified work on April 13, 2010, "with temporary restrictions of no lifting, pushing or pulling greater

7

than five pounds, restricted reaching above chest, overhead and away from body, and do not climb ladders." R. 1210. Dr. Johnson further opined that Plaintiff was "[t]emporar[ily] totally disabled if light duty is not available." R. 1210.

On May 18, 2010, after seeing Plaintiff again, Dr. Johnson reported in a second Progress Report that Plaintiff was complaining of "constant pain and limited range of motion" but that Plaintiff's shoulder was "stable and healing." R. 1209. Dr. Johnson advised that Plaintiff could return to modified work on that date with the same temporary restrictions as in the first Progress Report (although there was no assessment of disability in this report). R. 1209. In his third Progress Report, dated July 6, 2010, Dr. Johnson noted that Plaintiff was not working and had stated "his shoulder is worse." R. 1208. The third Progress Report indicated that Plaintiff had adhesive capsulitis—i.e., "frozen shoulder." R. 1208; *see also* R. 43. Plaintiff received an injection, a prescription for Percoset, a handout on frozen shoulder, and encouragement to continue physical therapy. R. 1208, 1217. Dr. Johnson again stated that Plaintiff could return to modified work with the same temporary restrictions: (1) no lifting, pushing, or pulling greater than 5 pounds; (2) restricted reaching above chest, overhead, and away from body; and (3) no climbing ladders. R. 1207-08.

On July 28, 2010, shortly after the third Progress Report was transmitted, the hearing was held before the ALJ. *See* R. 55. At the hearing, Plaintiff testified regarding the March 2010 shoulder surgery and the diagnosis of frozen shoulder. R. 80-81. Plaintiff agreed with his attorney's statement that Plaintiff was waiting "because of the worker's compensation injury for a decision to be made with respect to a second surgery" on his shoulder. R. 80-81. Plaintiff testified that he could do "very little" away from his body with his left hand, although

he could pick up and carry an empty pan across the room, and that he was subject to the 5-pound and exertional restrictions described in Dr. Johnson's Progress Reports—although only with regard to his left shoulder and arm. R. 81-82.

After the hearing, Plaintiff's attorney submitted nearly one hundred pages of additional evidence for the ALJ's consideration, some of which pertained to post-hearing treatment. *See* R. 1218-1306. The majority of this evidence reflects that Plaintiff sought medical treatment for diabetes-related complications, headaches, special shoes, and anxiety. *See, e.g.*, R. 1223, 1266, 1281, 1293. There also is included, however, an Operative Report and an additional Progress Report from Dr. Johnson. R. 1219-21. These documents reflect that Plaintiff underwent a second surgery by Dr. Johnson on his left shoulder on September 1, 2010, for "manipulation under anesthesia," anterior and posterior capsular release, release of coracohumeral ligament, and extensive rotator cuff debridement. R. 1220-21. On September 9, 2010, Dr. Johnson opined in the fourth Progress Report that Plaintiff had "expected swelling and pain" and that Plaintiff could "[r]eturn to modified work on September 24, 2010, with temporary restrictions of no lifting, pushing or pulling greater than five pounds, restricted reaching above chest, overhead and away from body, and do not climb ladders." R. 1219.

In her determination, the ALJ noted both of Plaintiff's 2010 surgeries on his left shoulder and recited certain of Dr. Johnson's observations from the third Progress Report of July 6, 2010. R. 43-44, 1208. The ALJ's decision therefore reflects that the ALJ at least to some extent reviewed relevant left-shoulder medical records. The ALJ, however, did not discuss any of Dr. Johnson's impressions, diagnoses, or prescribed treatment outlined in the

9

other Progress Reports or from either of Dr. Johnson's Operative Reports. More significantly, the ALJ did not mention the functional work restrictions ordered by Dr. Johnson in each of the four Progress Reports, much less articulate any relevant findings or weight to be assigned to Dr. Johnson's opinions as to Plaintiff's functional limitations.

The ALJ, in assessing Plaintiff's RFC, found significantly lesser functional restrictions than were determined by Dr. Johnson. *Compare* R. 1207-08, 1209, 1210, 1219 (limiting Plaintiff post-surgery to lifting/pushing/pulling only 5 pounds), *with* R. 40 (finding that Plaintiff has the ability to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently). Because Dr. Johnson was Plaintiff's treating physician, the ALJ was required to evaluate and weigh Dr. Johnson's opinion as to the restrictions upon Plaintiff's abilities and, to the extent the ALJ rejected such opinion, to articulate her specific, legitimate reasons for doing so. *See Watkins*, 350 F.3d at 1300-01; 20 C.F.R. §§ 404.1502, 404.1527(c)(2)-(6). Relatedly, having found that Plaintiff's left-shoulder impingement was a "severe impairment" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with that impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); R. 34-35, 37, 38. The ALJ's decision does not meet these requirements.

The Commissioner argues that the ALJ's error may be excused because the ALJ "accounted for" Plaintiff's shoulder condition in her decision and because the RFC otherwise is supported by the evidence. *See* Def.'s Br. (Doc. No. 16) at 4-6. To the contrary, the Commissioner's and this Circuit's standards for consideration, and rejection, of a treating physician's opinion require express discussion of certain points. *See supra*; 20 C.F.R. § 404.1527(c)(2)-(6); *Watkins*, 350 F.3d at 1301 (holding that a reviewing court may not

"simply presume the ALJ applied the correct legal standards" in considering treating physician opinion). Nor may a reviewing court "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

In light of the errors specified above regarding the ALJ's analysis of Dr. Johnson's opinions and the functional restrictions on which Dr. Johnson opined, remand for further consideration by the Commissioner is required. *See Watkins*, 350 F.3d at 1300. Because these issues alone warrant remand, the undersigned need not address the other claims of error raised by Plaintiff. *See id.* at 1299.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by August 13, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 30th day of July, 2014.

*Charles B. Goodwin*

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE